Mr. Caldwell, I'm representing Mr. Avenetti in the Social Security case this morning. I believe this case is a simple one and a straightforward one. There are lots of things that we could talk about, but I'd like to talk about what I think is the determinative issue. And that is the listing that Mr. Avenetti was found equal when he was first determined to be disabled in 1996 before he was terminated in November of 1998, which is why we're here today. The argument was made that Mr. Avenetti continued to meet listing 1.13, and that's the argument that I present today. The one thing I'm not clear about is why he was found to equal that listing as opposed to meet it, because it seems to me the plain language of the listing shows that he had every single thing that's in that listing. He had the soft tissue injury. He had the staged surgical procedures. He wasn't restored to major functioning. Perhaps it's the Commissioner's position that because it was a burn as opposed to some sort of trauma, that's an equaling as opposed to a meeting. But the functional difference is immaterial. In my brief, I cited this Court's decision in Pitzer, P-I-T-Z-E-R, which dealt with a different listing. But the principles are exactly the same. In Pitzer, this Court said a listing means what a listing says it means. You can't add additional requirements. And that's the mistake that I think is being made in the Commissioner's position here. The district court and the Commissioner now is asserting that there has to be something more. As opposed to just having the staged surgical procedures, the staged surgical procedures themselves have to cause disability. That's not in the language of the listing. And using this Court's principles in Pitzer, I believe that applies to Listing 1.13. Now, someone who's a better legal researcher than I am came up with the Senni case, and this Court said that the parties should be prepared to discuss that case. The Senni case does a better job in the sense that it addresses Listing 1.13 specifically, although I think the principles of the Pitzer case still apply. So if that is the case, then the remaining issue is what this Court should do if it agrees with that argument. And I believe this Court should remand for continuation of benefits without further proceedings. There may be deference given to the agency's determinations on medical issues, but this case is simply a matter of reading the language of the listing, looking at the facts, and say, is the language of the listing met? There are four cases that I cited, three in my opening brief and one in my reply brief, Holohan, Schneider, Lester, and Pitzer, where this Court did just that in all of those cases. That is what I think is determinative. There are the other issues that I'm certainly willing to respond to, but otherwise this might set a record for my shortest oral argument. Are there any questions the Court would like to ask me? I don't see any. We'll hear from the Commissioner at this time. Ms. Montano. May it please the Court. Your Honor, I also think that this is a fairly simple case, and I do think that the judges should just take plain notice of the language of the listings. Our theory in this case is this. The plaintiff did equal the listing 1.13 originally when he was in an automobile accident and he sustained very severe burns to various parts of his body. He underwent about 13 procedures between August and October of 1995, but by 1996, he had shown a marked improvement in function. What the listing says is that you need to have an impairment, a soft-tissue injury of an upper or lower extremity, and it requires staged surgical proceedings which are meant to salvage or restore major function of the affected part. Major function is really — it's a term of art that you can find in the preamble to the listings. What major function means is it's very serious. What it usually refers to is either a deformity, an amputation, or a destruction of the bone or the joint. That's in 1.00 of the listings. And other portions of the listings indicate that in order to have loss of major function, you need to have a loss of either fine or gross motor movements for the upper extremities or inability to ambulate for the lower extremities. So it is a very serious, severe thing we're talking about, salvage or restoration of major function. He met this because when he was burned, he needed multiple procedures, not necessarily on an upper or lower extremity, which may be why he didn't meet the listings head on. But because of all of his injuries and the limitations he suffered from these injuries, the agency properly found that he did meet the listings as of his date of his accident and for almost, you know, two years after that. What happened is these 13 stage procedures, they were stage surgical procedures to restore function, those ended in 1995. And then according to his own treating physicians, it took another year for his burns to all heal. And then after that, by 1996, Dr. Porter, his own physician, said his burns are all healed. He's done absolutely remarkably well. He's willing to come off medication. Another doctor, who independently examined him in 1998, said he denied any significant pain as a result of his burn injuries. He had no complaints and no limitations of his upper extremities. Now, plaintiff argues that he should be found to continue to meet the listing, but what is blurred in this case is for how long should he be continued. He doesn't even indicate, like, when this period of disability would end. This accident happened in 1995, 10 years ago. And by 1997, major function had been restored. An occupational therapist examined him in 1997 and found he had functional capacities that were quite significant. He could sit for 67 percent to 100 percent of the day. He could walk 34 to 66 percent of the day. He was motivated and willing to return to the workforce. What no one disputes that Mr. Avenatti should — did not have the residual functional capacity to return to his past work, because his past work was as a mine laborer, which was very heavy and obviously a dangerous work. And what the ALJ found is supported by the record is that Mr. Avenatti had sufficient function, he's a younger individual, to simply perform sedentary work, such as a patcher or a ticket seller. Under the regulations, to meet a listed impairment, what you need is — well, what the listed impairment requires, any listed impairment, is that you have inability to do any gainful activity. And what the Commissioner's position here is that in Listing 1.13, it recognizes the limitations not only from the impairment itself, but also from the plaintiff being — the claimant being tied up in surgery, which is also — limits his function. And so the purpose of that listing is to be able to compensate someone who's tied up in surgical procedures who might not otherwise be disabled. Some of the other cases that I cited, for example, NEP and WAIT, discuss this really well. They discuss, for instance, how a person maybe such as Mr. Avenatti would equal Listing 1.09 because that would require amputation, not only amputation but of two limbs, of both upper extremities, both lower extremities, or one upper or one lower. But in this case, you could have loss of function of one extremity but be tied up in surgical procedures such that the agency would recognize that you're disabled. In summary, the Commissioner's, Administrator's, position is that this listing is addressed to restorative conditions, and once restored, the person cannot need it. Well, that's partly correct, Your Honor. It's aimed at restoring function, but it's — the listings have — it's almost like a math equation. They have to have all requirements met. So you need to have the soft tissue injury. He had that. You need to require the staged surgical procedures to restore function. He had that. And his function was restored by 1997. He had two additional surgeries in 1999. This was after his cessation date. But they were simply to revise the scar tissue on his right knee in order to give him fuller mobility of the knee. But by 1997, he was already able to walk and stand and — and do the things that would be necessary for him to do sedentary work. Therefore, it's the Commissioner's position that he met — he met the listings until his staged surgical procedures ended in 1995, actually. By 1996, he had improved. By 1997, he — major function had been restored. And in 1999, those two procedures, they were not part of the staged surgical procedures. He had already had major function restored. So, Your Honor, it's — it's — it's correct that it's our position that because major function was already restored, these additional procedures wouldn't qualify him to — to meet or equal the listing. That's — that's our decision. Okay. Thank you for your argument. We'll hear rebuttal. Mr. Caldwell. Well, as the Court knows from reading the briefs, Mr. Abinetti was burned over 30 percent of his body, almost 40 percent. And many of those burns were third degree. The Commissioner told you that marked impairment of function means deformity. And if I can just briefly refer to page 21 of my brief, here's what happened in 1999. Three months after the sensation date, extensive scar contracture of the back of the knee was found when Mr. Abinetti was examined at the Plastic Surgery Clinic at Maricopa Medical Center in February of 1999. He then had surgery, and I'm quoting, for a wide local excision of burn contracture and closure with local tissue. Only four months later, the examination showed residual scar tissue in the same area. In addition — in addition, Mr. Abinetti suffered from, quote, an extensively tender right calf. And when surgery was performed, and again I'm quoting directly, findings included classical knee extension contracture bend from the knee, proximal leg extending toward the back of the knee. Severe scarring throughout. If that isn't deformity, what is? It's — I just — one part of the argument I don't quite understand, I want to make sure I do. If you're — if a claimant takes one year to have their major functions restored because of continuing surgical operations, and then after that is competent to work in the open marketplace, does he or she continue to get benefits merely because over a one-year period he or she was receiving medical treatment which forbade any type of employment? Okay. The way the agency does this, I'm going to the regulation — No, I don't care about the agency. I want to know is what is your position? My position is that when you're looking at a continuing disability review, you look at the period of time when the agency said the person no longer became disabled. What happened prior to the point where the agency said the person was no longer disabled is irrelevant. How about after? Because he's already been on disability. I don't understand. If a person is disabled for one year due to medical treatment, and then subsequently has restoration sufficient to work, do the benefits terminate? Yes. They do? Certainly. Okay. But let me just add to that answer that the regulations state that if a person continues to meet a listing, that's the end of the discussion. The person is presumptively disabled. I'm not sure what you just told me. Does that include a listing of 1.13? Yes. If he continues to meet listing? If — my hypothetical was the person is — cannot work during a one-year period when they're having medical treatment, then subsequently they are restored sufficient that they can. Then the person no longer gets benefits unless they otherwise qualify. But they can't qualify under 1.13. Well, if you don't qualify under 1.13, that's not the end of the discussion. I understand. You then go on to look at their residual functional capacity. I understand. But if you do meet 1.13, you don't go any further. The Commissioner recognizes that that is presumptively disabling, and that's the end of the discussion. Even if they are completely restored, their function is completely restored? By definition, if you meet listing, 1.13 function isn't restored because that's a requirement of the listing. Okay. So that's what I think this Court should do here. Okay. Thank you for your argument. Thank both sides for their argument. The case just argued will be submitted for decision.
judges: Wallace, Hawkins, Thomas